[Civ. No. 22341. Second Dist., Div. Two. Oct. 28, 1957.]

CLARENCE HAVEL, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

William T. Hays for Petitioner.

Everett A. Corten and Edward A. Sarkisian, Donald Gallagher and Loton Wells for Respondents.

RICHARDS, J. pro tem.*—Petitioner Clarence Havel, a former policeman, seeks by this writ of review to annul a decision after reconsideration made by the respondent Industrial Accident Commission determining that he did not sustain a compensable injury and annulment of its order denying his application for reconsideration.

Petitioner entered the employment of the city of Burbank as a police officer, under civil service, in 1941 and worked as a motorcycle and automobile patrol officer thereafter except for a short period in the military service. In about April, 1954, he began having a heavy feeling and pain in his chest and into his left forearm. Following a struggle with a man resisting arrest in December, 1954, he had the same pain in his chest and arms and in the latter part of December, 1954,

---

*Assigned by Chairman of Judicial Council.

after climbing a ladder in pursuit of a burglar, he had a recurrence of the same pain. About January 9, 1955, after chasing a speeding motorist, he again felt pain in his chest. On each of these occasions the pain subsided in about a half hour. On January 28, 1955, after taking the previous day off on account of sick leave, he went to work but did not thereafter go back to his job as he was feeling tired and lifeless. He rested at home for a few days and on February 4, 1955, was hospitalized for a heart attack which came on while he was at home. After remaining in the hospital for nine days he rested at home until May 17, 1955, and thereafter worked intermittently at other jobs until he stopped work altogether on January 8, 1956.

Labor Code, section 3600, provides that liability for compensation exists against an employer for any injury sustained by his employee, arising out of and in the course of his employment where both the employer and employee are subject to the compensation provisions of the code. ▮ With respect to employees of the city police departments, an injury as defined by Labor Code, section 3208, is enlarged by the provisions of Labor Code, section 3212.5, to include "heart trouble" which develops or manifests itself during the period while such employee is in the service of the police department. That section also provides that such "heart trouble" so developing or manifesting itself shall in such cases "be presumed to arise out of and in the course of such employment." This presumption is declared to be disputable but the code provides that unless it is controverted by other evidence the commission is bound to find in accordance with it. Notwithstanding this presumption, the "heart trouble" must be established to have arisen out of and in the course of employment to be compensable. (*Horn* v. *Industrial Acc. Com.*, 128 Cal.App.2d 837, 843 [276 P.2d 673].)

The medical experts were unanimous in their opinion that the petitioner was suffering from a coronary arteriosclerosis which is described as a progressive narrowing of the coronary heart lumen so as to impair the blood supply to the heart muscles. During periods of unusual exertion or emotional excitement more blood is required and the heart beats faster. When the arteriosclerosis has progressed far enough, the size of the arteries becomes too small to permit sufficient blood to reach the heart during such periods of exertion or excitement. This condition of blood insufficiency is known as ischemia. When this occurs, heart pain results, known as

angina pectoris. It is clear from the medical evidence that neither ischemia nor angina pectoris is a disease but both are symptoms or manifestations of underlying "heart trouble" which in this case was a coronary arteriosclerosis. Petitioner's own testimony demonstrates that any angina pectoris suffered by him prior to February 4, 1955, as distinguished from the underlying arteriosclerosis, did not result in any temporary disability or require medication or hospitalization.

The primary question involved in this review is whether there s substantial evidence to support the commission's decision that the petitioner's disability and the underlying disease, coronary arteriosclerosis, were not caused or contributed to by his former employment as a police officer and to controvert the presumption provided by the code.

On May 28, 1955, the petitioner was examined by Dr. Sim P. Dimitroff, a specialist in cardiology, whose report was received in evidence. The following is quoted from the concluding comment and opinion of the doctor's report: "Mr. Havel has coronary sclerosis due to disturbance in cholesterol metabolism. His blood cholesterol is unusually high. Because of narrowing of the calebre [sic] of the arteries, supply to the heart muscle is reduced. When increased demand for it cannot be met, chest pain results (angina pectoris). He had angina in December, 1954, January and February, 1955, noted upon activity. There is no evidence that he had myocardial infarction. His work did not cause, contribute to, hasten, aggravate or precipitate the coronary artery disease. The occurance [sic] of anginal chest pain at work, merely indicated the presence of the underlying heart disease. Certain activity created demand for more blood to the heart muscle. The hardened, narrowed arteries could not provide it. Chest pain occurred. I can find nothing in the file to indicate any damage to the heart due to his work. His electrocardiogram is now normal. The scuffling episodes with the drunks were transient episodes without significant effect." Dr. Dimitroff later testified: "My opinion remains as before, that his work did not cause, contribute to, hasten, aggravate, or precipitate coronary atherosclerosis. . . . The incidents indicated that when the chest pain appeared that there was a temporarily insufficient blood supply to the heart muscle, but that after the episodes causing the chest pain were alleviated or had ceased, that the transient effects were overcome, that there was no permanent effect, as far as we can tell. In other words, a chest pain was a sign of the underlying ordinary

coronary artery disease, and the nature of the chest pain and its duration did not indicate that the appearance of the chest pain caused any further damage, further progression of the coronary artery disease.''

Dr. Joseph A. Dickerman, petitioner's family physician, who attended him at the hospital testified that from the cardiograms taken at the hospital he concluded the petitioner had not suffered a coronary infarction and that the underlying pathology was arteriosclerosis of the coronary arteries which would have developed without regard to his occupation as a police officer. Petitioner was also examined by Dr. Willard J. Zinn and in his report which was received in evidence he gave his opinion that ''There is no evidence that Mr. Havel's occupation as a policeman would cause premature coronary atherosclerosis, although once the metabolic state had so narrowed the coronary arterial lumen as to impair the blood supply to the heart muscle his duties would cause symptomatic coronary artery disease.'' Dr. Zinn later testified that the petitioner had not suffered a coronary infarction; that there was no evidence that his occupation would cause premature atherosclerosis and that the incidents of chest pain which the petitioner had experienced while working produced no alteration in the preexisting atherosclerosis. Dr. Morris Goldstein examined the petitioner in October, 1955, and found no evidence of coronary thrombosis or coronary infarction but gave his opinion that the petitioner's work as a policeman might very well bring on the symptoms and signs of coronary atherosclerosis prematurely and that if he were not a policeman his symptoms might not have developed for five or ten years. Dr. Alan Frank, an independent medical examiner appointed by the commission, examined the petitioner and rendered a report which was received in evidence in which he stated that it was his opinion that the petitioner did not suffer a coronary thrombosis or myocardial infarct. As to the effect of the petitioner's work as a policeman on his underlying coronary arteriosclerosis, Dr. Frank's report stated ''It seems quite possible to me that work, such as Mr. Havel was doing, which involved meeting life and death situations several times a week might very well increase the process of coronary arteriosclerosis and thereby advance by several years the onset of angina pectorus [sic].'' A medical opinion which is based on conjecture has little, if any, evidentiary value. (*Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689, 692 [192 P.2d 1].) Dr. Frank later testified that in his opinion the underlying

pathology of petitioner's arteriosclerosis was due 20 per cent to his work as a police officer and 80 per cent thereof was nonindustrial.

The comparative weight given by the commission to the medical opinions of Drs. Frank, Dimitroff and Zinn is reflected by the written report of the commission denying reconsideration, which states in part, "The Panel, reviewing the doctor's [Dr. Frank] report and testimony, was of the opinion that it represented no more than sheer speculation and not entitled to the weight the Panel would give to the opinions of Dr. Dimitroff and Dr. Zinn." ▓ The weight and credibility to be given to the reports and testimony of examining physicians is to be determined by the commission (*Sun Indem. Co.* v. *Industrial Acc. Com.*, 85 Cal.App.2d 171, 177 [192 P.2d 765] ; *Maryland Cas. Co.* v. *Industrial Acc. Com.*, 64 Cal.App.2d 162, 166 [148 P.2d 95] ; *Hart* v. *Industrial Acc. Com.*, 71 Cal.App. 542, 547 [235 P. 748]) as well as the resolution of any conflicts in the medical opinions. (*Limited Mut. Comp. Co.* v. *Industrial Acc. Com.*, 37 Cal.App. 2d 50, 55 [98 P.2d 837].)

The vital question to be determined in this proceeding is whether there is substantial evidence in the record in the form of expert medical opinion to controvert the presumption of section 3212.5 and to support the commission's decision that petitioner's coronary arteriosclerosis is nonindustrial. ▓ It is well-established that the finding of the commission as to the cause of disability is conclusive upon review when supported by substantial evidence. (Lab. Code, § 5953; *Stoll* v. *Industrial Acc. Com.*, 20 Cal.2d 440, 445 [126 P.2d 865] ; *Abelseth* v. *Industrial Acc. Com.*, 8 Cal.App. 2d 270, 274 [47 P.2d 516].)

▓ The opinion of Dr. Dimitroff, whose qualifications as an expert in cardiology are noted in the margin,[1] was positive and unequivocal that petitioner was suffering from coronary sclerosis due to a disturbance in cholesterol metabolism and that his work did not cause, contribute to, aggravate or precipitate his coronary heart disease. This opinion directly controverted the rebuttable presumption that petitioner's heart trouble was caused by his employment. ▓ When a presumption is controverted by other evidence, an issue of

---

[1]Certified specialist in internal medicine by the American Board of Internal Medicine, member of the American Heart Association, California Heart Association and Los Angeles County Heart Association, Chairman of the Cardiac Clinic Committee of the California Heart Association.

fact is raised which it is the duty of the trier of facts to determine as in other cases, and its conclusion is conclusive upon an appellate court unless it is manifestly without support in the evidence. (*Scott* v. *Burke*, 39 Cal.2d 388, 398 [247 P.2d 313] ; *Fanning* v. *Green*, 156 Cal. 279, 282 [104 P. 308].)

Petitioner argues that inasmuch as medical science cannot scientifically demonstrate the cause of coronary arteriosclerosis, a medical opinion that the petitioner's underlying condition was neither caused by nor arose out of his employment does not controvert the presumption of section 3212.5. This argument is plausible but not tenable. The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty. (Code Civ. Proc., § 1826.) ▉ Neither absolute certainty nor conclusive proof is required to overcome a rebuttable presumption and all the law requires is proof reasonably certain in view of all the circumstances. (*Wirz* v. *Wirz*, 96 Cal.App.2d 171, 175 [214 P.2d 839, 15 A.L.R.2d 1129].) The quantum of evidence necessary to overcome a rebuttable presumption depends upon the character and circumstances of the particular case, and no hard-and-fast rule can be laid down other than that proof to a reasonable certainty, such as would convince the mind of an ordinary man must be presented. (*Simonton* v. *Los Angeles Trust & Sav. Bank*, 205 Cal. 252, 258 [270 P. 672] ; *Estate of Nickson*, 187 Cal. 603, 606 [203 P. 106].)

We are of the opinion that there was substantial evidence before the commission to controvert the presumption in favor of the petitioner and, we cannot, therefore, hold as a matter of law that the presumption and supporting evidence necessarily compel the conclusion that the petitioner's heart trouble was of industrial origin.

*Horn* v. *Industrial Acc. Com.*, 128 Cal.App.2d 837 [276 P.2d 673], is relied upon by petitioner in support of a contention that in any event he was entitled to temporary disability indemnity for his temporary disability and hospitalization following the heart attack on February 4, 1955, which was several days after the termination of his employment as a police officer by the city of Burbank according to the unchallenged finding of the commission. In Horn, the order denying compensation to a city fireman for heart trouble was annulled for the reason that the applicant was not fairly allowed to show that his heart trouble had manifested itself

during his employment thus entitling him to the benefits of the presumption created by section 3212.5. Moreover, it was held in that case that the finding of the commission that he did not sustain an injury on or about a given date was too limited for the reason that the petitioner was entitled to findings as to whether or not his heart trouble had developed or manifested itself during his employment as a fireman. The decision further points out that there was no evidence in the record controverting the statutory presumption and the finding that the applicant's disability did not arise out of his employment was without support. In the matter before us the petitioner's entire history of attacks of angina pectoris was before the commission; it found that the petitioner did not sustain an injury to his heart or to his cardial-vascular system as a result of his employment at any time during such employment and, as previously discussed, there was substantial evidence that the petitioner's heart trouble did not arise out of or in the course of his employment. It is apparent that *Horn* v. *Industrial Acc. Com., supra,* is distinguishable from the instant matter and is not contrary to the decision of the commission denying the petitioner temporary disability benefits.

Finally, petitioner asserts, without support from the record, that the commission in making its decision ignored the 1949 amendment to section 3212.5, refusing and failing to weigh the presumption as evidence and weighed only the medical opinions. It is manifest from a reading of the petitions for reconsideration and the answers thereto that the principal issue before the commission was whether the medical opinions controverted the presumption. ▮ It is presumed that the commission decided the matter on all of the evidence. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 92 [199 P.2d 302].)

The decision after reconsideration and the order denying petition for reconsideration are affirmed.

Fox, Acting P. J., and Ashburn, J., concurred.